at all. At this time, would counsel for the appellant please introduce yourself on the record to begin. Yes, David Efron for appellant. Good morning, your honors. If I may reserve five minutes for rebuttal. No, you can have three. Yes, your honor. May it please the record. Defendant's hospital and doctor's departures from the medical standard include failure to recognize, appropriately assess, and repair damage to any organs in or near the operative field prior to closing abdomen. Failure to recognize that Mrs. Rodriguez's colon was damaged during the first surgery. Perform an appropriate repair procedure to assure the colon integrity. Failure in the proper management of hygiene by the hospital staff in the care of Mrs. Rodriguez. Failure of the documentation of the findings. Failure to manage the infectious processes suffered by the patient. Failure to manage patient's pre-existing condition of diabetes, which likely exacerbated her condition and accelerated her demise. Failure to timely correct the displacement of the fecal collector. And failure to manage the patient's care, who presented pressure ulcers at autopsy due to the staff not changing her position in the required time. The premature death of Mrs. Rodriguez-Rivera was caused by... Mr. Efron, the key to, at least a part of this case turns on the expert report by Dr. James, right? Yes, I'm getting to that right now. Well, let's go right to it because we're pretty familiar with the case. So, maybe you have an argument that even if the Dr. James report is struck, you still can win. But, putting that aside for the moment, you certainly are challenging the striking of the report of Dr. James. Of course, Your Honor. Yeah. So, the grounds that I see for the striking is a lack of causality and a lack of standard of care. So, you want to just address those two points? Yes, Your Honor. It's a no-brainer. Everybody agrees, all three experts including the two defendants experts agreed that she died because of the infection due to the unattended to damage to the organs. But, what I don't see in the Dr. James report, at least, is the any statement that a standard of care for cleanliness was breached and the breach of that standard of care caused the death at a faster than it would have otherwise occurred. Because, at least if I understand it, the only causality statement that I saw in the Dr. James report was attributing it to a lack of care for the diabetes, not properly managing the diabetes. No. No, Your Honor. I have a, I mentioned some of the things at page 10 of the brief. We mentioned a few of the things that Dr. James stated in his report. He stated that she expired from sepsis and septic shock caused by the perforated sigmoid colon. Yeah, but he doesn't say that the perforation was the result of a standard of care that he articulates that then was breached. Well, then he states that there's no doubt, there's little doubt regarding the inappropriate nature and poor hygiene. Right, and then he never says that the death was caused by that inattention. The... That's my problem, is I'm just trying to put the pieces together. Where there is a standard of care arguably articulated and an articulation of the breach, there's no claim that that caused the death. And where there is a claim about what caused the death, there's no articulation of a standard of care and an explanation of how it was breached. Sometimes when, the case law tells us that when sometimes some things are obvious, it doesn't need to be specific. When he states... Well, aren't you verging towards a race-civs argument? You don't want to rely for causality on race-civs, that's not going to work, right? I'm not doing that. But that's what it sounds like, that's what you're saying. You've got a race-civs equality in the argument itself. If we look at the timeline, if we look at the timeline of this case, in 2018, this case was filed and Dr. James' report was submitted to the defendants. It was not until four years later that they seemed to, they decided to not depose him, they decided to conduct no further discovery on this. And four years later, after all of the terms had expired, they decide to file a last minute, once trial was set, a last minute motion in limine. Why do they have an obligation to... Let me just finish the question for you. Why do they have an obligation to preclude a good argument on their part that the expert report lacks certain essentials, if it's going to be admitted, such as addressing standards of care and causality? I mean, you're the one who should try to prevent any such argument from having any force. Why do they have an obligation to protect you from that? Well, it's not that they have an obligation, it's just that they should have raised it when the dispositive motions were due to be filed in 2019 and not wait until 2022, on the eve of trial, to file a motion in limine, which was denied, filed a second motion in limine a month later, that one was granted, and then automatically, Judge, at that point, it was Judge Young denying all the dispositive motions at that point, Judge Young refers the case to Judge Pedro Delgado for trial, and a month before trial, the case gets vacated because there's a summary judgment pending, which eventually is granted, summary judgment based on an untimely motion in limine, that they waited four years to file, and he could have, and he should have been allowed to correct or amplify his testimony at trial based on the report. Was there a motion to amend the report? We never did that, Your Honor. Could you view? I'm not sure, because there was, I don't remember if we had a due date for filing the reports, and once that's done, I guess I could do it with leave of court. And that was not sought? Excuse me? And that was not requested? It was not, Your Honor, it was not. Counsel, I get the sense that you may be arguing that the trial court's focus on the absence of an articulated standard of care is really kind of beside the point here in the sense that what standard of care should tell surgeons that they're not supposed to perforate the colon? Now, he, Dr. James looked at the medical records, he concludes that that's what happened during the initial procedure. I know there's a dispute about that, but your position must be, well, doctors have to know they're not supposed to perforate the colon. Then similarly, in the hospital, I mean, what standard of care has to be articulated to advise a hospital that they're supposed to prevent the kind of extraordinary infections that this is, in that sense, that seems to speak to a violation of proper standards to prevent such an awful outcome, and that's, I think that's your position, isn't it? And maybe that's why Dr. James did not go any further as far as indicating what the standard of care was violated, because it was obvious, it was obvious that an organ that's pierced involuntarily should be repaired. It's, you know, it's obvious that a hospital should have certain hygienic standards. But you just said something, the two things you just said, just so I'm clear, you said it's obvious that if it's been perforated, it should be repaired. Yes. Well, but then that means the perforation itself is not the breach of the duty? Well, the perforation is a breach, but we know that each operation... Do we know that the standard of care is such that every time there is a perforation, it would be negligence, and that's all that could explain it? No, Your Honor. Right. So, the fact of the perforation, you're not even arguing. No. You're saying it's the failure to repair. Correct. Correct. But with respect to that, what is the standard of care for what should have been done to repair it that was not met, that's articulated in the report? Well, in the report... Because the report then says that it was a failure to manage the diabetes that caused the death to be earlier. That was another departure. Okay. Then it says that in terms of what the standard of care is for managing the diabetes, that's not articulated. Okay. So, you don't seem to be arguing that as the negligence. Well, is there a standard of care articulated for managing the diabetes? Of course. What's the standard of care that Dr. James articulates? Well, he specifically, again, it was so obvious that there was inadequate care for her diabetes that he limited himself to just stating that on his report, that her diabetes was not managed at all. It should have been managed. But it was these doctors that are liable for that? The hospital. What did they do? What's the standard of care that they breached with respect to the managing of her diabetes? They had a patient with a medical record in their hospital, which they completely ignored. They didn't manage her condition of diabetes. They didn't manage her medical comorbidities. They didn't appropriately disinfect the hospital room, the equipment, and caused or created... And on that last, the second point, I do think you could read this to say that he's articulating a standard of care for sanitation that was not met. Where in the report does he say that is causal? That is what? Causal. Well, he doesn't. But in conclusion, in his opinion, he states that there are numerous deviations, failures, and departures from the acceptable standard of care. And when he says that, he's making reference to everything he mentioned before and to what defendants should have done. But I'm just saying that he doesn't tie the lack of meeting the standard of care for cleanliness to the cause that he identifies anywhere in the report that I can see. Maybe I'm missing it. Again, he does do it in a very general manner because, you know, if it's obvious, it doesn't really require specificity. It's so obvious that they should have followed the patient. It's so obvious they should have managed her condition. It was so obvious they should... Counsel, I wanted to, before you sit down, I know you have a chance for rebuttal, but I want to get this clear right now. You actually have in here, in Dr. James' report, a statement of causation. He says at the very beginning that it appears that Ms. Rodriguez-Rivera expired from septus and septic shock, a condition caused by the perforated sigmoid colon that occurred in the initial surgery. He's not talking about the failure to correct the perforation. He's saying flat out that the surgeons caused the perforated colon. You're not relying upon that as sort of the initial negligence that triggered everything? I do, and if you read my brief, I do. I thought you just said to me when I asked you, do we know and can we tell from what in the record that any perforation that occurs by a doctor during surgery is negligence? It is. What in the record would indicate that? I thought you said to me, well, it may be that a perforation could occur in which it wasn't negligent, depending on... If the perforation is a known risk of that operation, it should certainly be repaired. But that's the repaired point. Just the fact of the perforation itself, if that's a known risk, then it may be that it's not negligence just because it occurs. Just because it's a known risk doesn't mean that it was not negligence. We have to see under what situations. Dr. James opines that it was negligence. He doesn't. He says it happened and it's the cause, but he doesn't say it was a breach of standard of care. Here's what the standard of care is. That's why this perforation was a breach. Well, he states that in the part where he states, where he opines on causality and on the cause of death. All three experts agreed on that. The autopsy report agreed. So there's no issue as to causality, as to what caused it. The issue really is whether his report had enough indication as to what the deviations of the standard of care were to cause that result. As far as causality, I don't think we have an issue. Sorry, I just wanted to clarify that. So is it your position that the two defense experts agreed that the patient's colon was perforated during the surgery? No, no, no. All experts agreed on causality, on why the patient died. And it goes to the situation with the perforated colon. All three experts agreed on that. Thank you. Thank you. Thank you, counsel. At this time, would counsel for Apolli Vélez-Garcia please introduce himself on the record to begin? Good morning. My name is Roberto Ruiz Comas. I am the attorney for Apolli, Dr. Iris Vélez-Garcia. Your Honor, I think that you have been on point regarding the fact of the lack of reliability of Dr. James' expert report in this case. The first thing is that the expert report does lack the specific standard of care that was violated by Dr. Vélez in this case. With respect to what? There's so many moving parts in this. There's the managing of the diabetes. There's the sanitation post-operation. As to the second one, as I read it, he's saying there was a standard of care that was not met here because of the lack of cleanliness in the hospital. If that's right, what is the significance of that for your case? Well, in my case particularly, it's not significant because the doctor is not the one who takes care of that within the hospital. There was other physicians within that admission, internists, infectologists, pulmonary specialists. So from your perspective, your client is responsible only with respect to the surgery itself? From my perspective, my client is responsible for the surgery itself and the consequences of the surgery if there were. But I need to point out something that is very clear here. Plaintiff is saying that there is consensus as to causality. That is not correct. There is no consensus as to causality. If you read the reports of the defendants' experts, the defendants' experts, what they say is that what caused the death of this lady was sepsis. In that respect, everything, everybody agrees. But what caused the sepsis is where we digress from what plaintiff expert report states. Because what the experts for the defendants state is that there was no perforation. Wait a second, counsel. That strikes me as a classic jury issue. Dr. James says that in the initial surgical procedure, the colon was perforated. There's a dispute about that. You cannot resolve that dispute at summary judgment. You can't say that is not an issue for the jury to decide when you have experts disagreeing as to when the perforation occurred. How can that not be a jury issue? It is not a jury issue, first of all, because the report lacks the specificity as to when that violation occurred and what was the standard that was violated. Are you saying that even if the perforation occurred during that initial surgical procedure, she perhaps was so compromised already at the time that that procedure took place that even if the surgery was performed in a way that complies with all standards, perforation was always a risk, and so the fact that there was a perforation does not answer the question of whether there was some violation of a standard of care that resulted in it. Is that your argument? No, my argument is that there's no objective clinical evidence that there was a perforation. The problem with what I'm saying — I can't imagine you want to rest on that. No, no, what I'm saying is that when you read Dr. James' report, Dr. James does not articulate what Dr. Bellis or Dr. Mateo should have done in order to comply with the standard of care. And the other thing that the report lacks from the perspective of the standard of care is that you have to articulate in the report, this is the standard of care, this was not met, and this particular — If I can just — there's two different points I think that are maybe being run together. If I understand it, you're saying apart from whether if there was an expert report saying reliably that there was a perforation of the colon, even if there was such a report and that would create a jury issue, you're saying we don't have such a report because Dr. James does not provide a reliable basis for thinking there was a perforation. Exactly. Okay, that's not a standard of care point. That's maybe related, but you're just saying just on the face of it, there's nothing in his report that explains how he comes to the conclusion that there was a perforation. He doesn't have an x-ray showing a perforation. He doesn't have any representation of a perforation by the treating doctor or anything like that. So, it's just a guess that there was a perforation. That, under Dawbert, you're saying is just not a reliable expert opinion to begin with. That's point one. Okay, if we disagreed with you on that, are you also making the argument that even if there was a perforation, there is nothing in Dr. James' report that articulates that the perforation was the result of a breach of a standard of care? Exactly. That's what I'm saying. Okay. My time is up. So, oh, no. I guess it feels bad. Well, you're always free to sit down.  Thank you, Jeff. Go ahead. Thank you. Thank you, counsel. At this time, the counsel for Menea et al. could please introduce themselves on the record to begin. May we please record? My name is Jose Arturo Gonzalez Villamil, and I represent Dr. Zacarias Mateo. He's a gynecologist, and he got involved in this case when Dr. Velez called him on April 21st, 2016, requesting his help, because she was doing a surgery on a patient that had a frozen pelvis. Dr. Mateo went to help her, and he also helped her with the exploratory surgery performed on April 29th, 2016. Besides that, he did not participate in any follow-up or surgical management of the patient. From our standpoint, the basis to affirm the opinions by Judge Delgado is the expert report. The expert report doesn't mention any explanation of the basis to conclude that a perforation occurred during the surgery of April 21st, 2016. There is no mention of the method utilized to reach that conclusion. There is no mention of those parts in the medical record or clinical evidence on which Dr. James anchors his opinion. So his conclusions are not reliable. The report does not mention any specific standard of care which must have been met by Dr. Mateo. The report fails to explain or even describe the numerous deviations, failures, and departures from the applicable standard of care which Dr. James considers to be attributable to Dr. Mateo. Counsel, the credentials of Dr. James were never challenged, is that correct? Yes. Okay. They were never challenged. He makes clear in his report the basis for his conclusion. He's examined the medical documentation. Now, to the extent that that would seem that the examination of the medical documentation was in some way an insufficient basis for the conclusion that he's reached, why wouldn't that be fair game for cross-examination at trial? The problem with the report is that the deficiencies are so great that there is no standard of care and there is no reliability. So there is no need to go to trial because that report must be excluded and his testimony must be excluded. Can you just pull apart the two points? The reliability goes to the opinion that there was a perforation caused by the doctor. Yes. Okay. And so then let's say we say, well, it's reliable enough. Okay, I know you disagree. Are you then saying that's when the standard of care matters, though, because there's no explanation of how the perforation was the result of a breach of a standard of care? Yes, the opinion had to include a deviation from the standard of care by Dr. Mateo because he didn't follow that standard of care. And maybe I don't know how exactly I'm supposed to think about this. I don't know enough, and maybe this is just the answer because a layperson wouldn't know enough, that there has to be an explanation of standard of care. One could imagine certain things a doctor could do that, if done, would be very hard to see how that could be in accord with the standard of care. If you amputate the wrong limb, you wouldn't say the standard of care is to do the right limb. So is perforating a colon like that or not like that, and how do I know? A perforation of the colon does not imply negligence. Is there anything in the record that suggests that? Any case law that suggests that? Anything in the record that supports that view? Well, there is nothing in the record in which Dr. James says because of what Dr. Mateo did, and he did it in this way, that's why the perforation occurred. And that is needed in a medical malpractice case. But just out of curiosity, the other expert reports, the defendant's experts, do they suggest in their reports that a perforation can occur in a way that is not negligent? In this case, what Dr. Colon's report states is that more likely than not, the perforation did not occur on the 21st, because if that had occurred on the 21st. That goes to whether there was a perforation. I'm asking a different question, whether their reports give any indication whether a perforation can occur non-negligently. In this case, what they are saying is. I know that. Okay, I got it. Thank you. Specifically stating, assuming that a perforation had taken place, that implies negligence. No, it doesn't imply negligence. It doesn't imply. That's res ipsa, precisely. Because if damage occurred, then something wrong must have been done by the physician. That's what they are relying on. That's why it was correct for the district court to eliminate this opinion. Thank you. Thank you, counsel. At this time, would counsel for the hospital son, Cristobal, please introduce himself on the record to begin? Good morning. My name is Josector Vivas. I represent Hospital San Cristobal and Quality Health Services of Puerto Rico, Inc. May I address the court? Yes, ma'am. Good morning again. The striking of an expert is reviewed by this honorable court for abuse of discretion. I think this is a matter that we need to focus on initially. Did the district court abuse its discretion under federal rule of civil procedure 26 and federal rules of evidence 702 in striking Dr. James' report? I think not. I think not. This is a case for diversity. Local law applies. I think plaintiffs in their brief ignore a major point in Hospital San Cristobal's brief and motion to strike the expert. And it's the case of Lopez Delgado versus Cañizares, which certified translation was provided to the court. And it's in the appendix in this case. Counsel, can I ask you a question? Sure. Can you foresee a situation where there could be a mixed result in this appeal? In other words, we might conclude that the district court did not abuse its discretion with respect to the portion of Dr. James' report that deals with the perforation of the colon. But whatever reason brought her to the hospital for care, there is enough in Dr. James' report to suggest that what happened to her at the hospital violated any reasonable standard of care. I mean, he pretty much says that. He comes much closer, I think, to being rather specific about the fact that any hospital that was observing proper standards of disinfection and so forth, what happened to her at the hospital would never happen. I mean, he describes in great detail all the terrible infections that she got because she was not properly treated at the hospital. I mean, that's the problem with the first part, the colon. What happened at the hospital was very troubling and seemed to violate any reasonable standard of care. That's the problem, Your Honor. What standard of care was reached in this case? He says, there is little room for doubt regarding the inappropriate nature of the poor hygiene which was utilized by the Yes, Your Honor. But the problem with that opinion and the report is which is a standard of care that states that the hospital needed to do this, this, this, and that, isolate the patient, have her in isolation, do this, present an infectologist, whatever. That is not in the report. That's the problem with the report. Okay. Can I put aside that if we didn't agree with you on that? You're probably the wrong person to ask this question because you're too likely to agree with it. But is, I don't see where in the report Dr. James is saying that the poor hygiene caused the death. No. He mentions the poor hygiene. He mentions as the causation the sepsis. And then he never says the sepsis that caused it was a consequence of the poor hygiene. No, no. Yeah. Not at all. Not at all. Your Honor, the issue Now, the district court didn't rely on that rationale for excluding Dr. James' report. Isn't that right? On which rationale, Your Honor? The district court did not identify the poor hygiene as a breach of, as a standard of care. And so it doesn't then rest the decision on the ground that, well, even if there was a standard of care of good hygiene, a claim that there was a breach of it, nonetheless, there's no representation by Dr. James that the breach of that standard of care as to hygiene is the cause of the sepsis. You're correct, Your Honor. Well, what do we do with that? That there seems to be a ground for, potential ground in your favor for excluding the report that the district court just never addressed. But I think, Your Honor, the issue with the report is that it does not address with medical references the guidelines, state so-and-so, and what the standard of care is. What are we going to say? Okay, the hospital, the doctors breached the standard of care. Which standard of care? What does the ACOG state in their guidelines? What does respected authorities state on how the surgery was done, on how the causation, on how a patient like this? Well, with respect to the hygiene, he seems to be listing all these different things that should have been done, and there's no documentation that any of it was done. That's the problem, Your Honor. It's what he thinks, and that's precisely what Lopez Delgado wants to avoid. Lopez Delgado wants the expert to show with respected authorities what should have been done, not what he thinks should have been done. Any further questions? No, thank you. Thank you. Thank you. Thank you, counsel. At this time, would Attorney Efron please reintroduce himself back on the record in his rebuttal? He has a three-minute rebuttal. Thank you. What you just heard was the reason why they should have deposed Dr. James and clarify all these issues. In the meantime— Do you mean depose, or do you mean hold a Daubert hearing? There was no Daubert hearing. There should have been. There was no Daubert hearing. The judge just granted that in limine over our objection. Did you ask for a Daubert hearing? Did not. The— Mr. Efron, what do you— Yes. The— Yes, Your Honor. You'd like to make a— Yeah. Rule 702, and this will be pretty much my last statement, Rule 702 has been interpreted liberally in favor of admission of expert testimony. Opinions as to the persuasiveness and credibility of an expert's opinion go to the weight of the testimony rather than to the admissibility and are questions that are properly reserved for the jury. For the reasons stated in appellant's brief, this dismissal should be reversed. The district court abused its discretion in dismissing this case. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.